[No. 292.   Decided December 18, 1891.]

DONALD G. MCKAY, *Respondent*, v. CHARLES E. RUSSELL AND WILLIAM L. RUSSELL, *Appellants*.

EVIDENCE—RELEVANCY—FRAUDULENT REPRESENTATIONS.

In an action to recover money paid upon a contract for the sale of real estate, on the ground that the sale was procured by fraudulent representations, it is inadmissible to show that in a similar transaction prior thereto defendants had made like misrepresentations to another party.

*Appeal from Superior Court King County.*

The facts are stated in the opinion.

*Jacobs, Jenner, Legg & Jacobs*, for appellants.
*Kilgen, Kelleher & Emory*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—Respondent contracted with appellants to buy a certain number of town lots in the town of Ballard,

in King county, Washington, making a payment of $860; the balance, $140, was to have been paid in a few days. It seems that the contract was made and the money paid by respondent without first looking at the lots, he alleging that he relied exclusively upon the integrity of the appellants, and bought entirely upon the strength of the representations made by them. It is claimed and alleged by the respondent that, when he came to see the lots which he had bought, they were only half the size appellants had represented them to be, and that they were not in the same, or as favorable, a locality as appellants had represented them to be. That the representations made by the appellants were falsely and fraudulently made; that they were untrue in every respect, and that they were made with the knowledge that they were untrue, and with the intention of inducing respondent to act thereon to his damage. That within a reasonable time after the discovery of the alleged fraud, respondent indicated to appellants that it was his intention to proceed no further with the contract; he refused to pay the balance due on the contract, and rescinded the same, and demanded the return of the money paid, to wit, $860; and upon the refusal of the appellants to pay him back the same, he brought his action for the sum of $860, with interest thereon from the date of payment. Appellants admitted the contract of sale, but denied all the allegations of misrepresentation or fraud. There were some affirmative allegations in the answer, but their discussion is not necessary to a determination of this case.

During the trial the court permitted one Steers to testify that he had purchased town lots of defendants in the same town a few weeks prior to the purchase by plaintiff, in which purchase Steers claimed to have been defrauded in much the same way that respondent claims to have been defrauded. This testimony was admitted over the objec-

tions of appellants, and is the first ground of error alleged here. We think there can be no doubt that the admission of this testimony was error; and while there seems to be some little conflict of authority on this subject, when the particular facts of the cases are considered it will be found that the conflict is more seeming than real; and we think no case has gone so far as this court would have to go to hold this testimony admissible. Of course the affirmative rule is that collateral facts are inadmissible. Some courts have talked about exceptions to this rule, and many controversies have arisen as to whether this or that particular state of facts fell under the exception. Mr. Greenleaf, in his work on Evidence, vol. 1, § 53, in speaking of this rule, seems to clearly indicate the character of collateral evidence which is admissible. Says the author:

"In some cases, however, evidence has been received of facts which happened before or after the principal transaction, and which had no direct or apparent connection with it; and therefore their admission might seem, at first view, to constitute an exception to this rule. But those will be found to have been cases in which the knowledge or intent of the party was a material fact, on which the evidence, apparently collateral and foreign to the main subject, had a direct bearing, and was, therefore, admitted."

And this has been the uniform test in all well-considered cases. Where, in a criminal action, the question to be determined was whether an act was accidental or intentional, evidence is admissible to show that other acts of the same character have been intentionally done by the defendant. Thus, it has been held that where a prisoner was charged with the murder of her child by poisoning, and her defense was that the death resulted from the accidental taking of such poison, evidence was admissible to prove that two other children of the prisoner and a lodger in her house had died from the same poison. *Rex v. Colton*, 12 Cox, Crim. Cas. 400. So, where the guilty knowledge of the

defendant is a question in issue, it has been uniformly held that evidence is admissible of similar acts of the prisoner at different times, if such acts tend to prove the existence of such guilty knowledge. Thus, where a person was indicted for passing counterfeit money, testimony showing that he had passed counterfeit money to other persons would be admissible to prove his guilty knowledge. And yet this character of testimony should always be admitted by the court with great caution and care, and the court should instruct the jury for what particular purpose it is admitted; otherwise, the jury is liable to lose sight of the true purpose of the testimony, and the result will be to prejudice them against the defendant, and to adjudge him guilty, not on the testimony tending to prove the crime charged, but of a charge of some other crime which he has had no opportunity of defending himself against. And the same caution should be observed in the trial of a civil action, lest the minds of the jury, by the introduction of a multiplicity of collateral issues, be led away from the main points in issue, and the proof directed to other points in an investigation of the merits or demerits of the parties in some other transaction, which is not before them for investigation.

We do not think the authorities cited by respondent sustain his contention. *Jordan v. Osgood,* 109 Mass. 457; 12 Am. Rep. 731, which is the leading case in Massachusetts, seems, both in its utterances and in its decision, to be squarely on the other side. There the plaintiff alleged that the defendant had obtained a bill of goods by false representations as to his solvency, and with the intention not to pay for them; and at the trial the plaintiff, over the objection of the defendant, offered testimony tending to show that the defendant had obtained goods from other parties, about the same time, under the same representations that he had made to plaintiff. That was a stronger case, so far as indicating any general scheme was concerned, than the case at bar, but the

supreme court, after an extensive review of the authorities, decided that the admission of such testimony was prejudicial error.   And the court says:

"We think it is clear that, upon the issue whether the defendant made the alleged representations to the plaintiffs, the evidence admitted was incompetent; the fact that the defendant has committed a similar but distinct crime or fraud is not competent to prove that he committed the particular crime or fraud with which he is charged.   .   .   .   The cases are numerous in which this subject has been discussed.   We think the true rule to be deduced from them is that another act of fraud is admissible to prove the fraud charged only where there is evidence that the two are parts of one scheme or plan of fraud committed in pursuance of a common purpose."

In *Wiggin v. Day*, 9 Gray, 97, the evidence offered was, that the defendant, at the time he purchased the wagons of plaintiff, was insolvent, and at about the time of the purchase he purchased a large amount of personal property of third parties, and got them into his hands by fraud, and then secreted them in numerous places.   The court sustained this testimony; but the secreting of the goods, under the circumstances of that case, showed that the acts charged were so connected as to make it apparent that the defendant had a common purpose in all of the purchases, and that he had formed a general scheme to cheat.   This was a Massachusetts case, decided prior to *Jordan v. Osgood*, *supra*, and was noticed and distinguished by the opinion in that case.   *Castle v. Bullard*, 23 How. 172, is a case where a firm of auctioneers, or commission merchants, had obtained control of the goods of the plaintiff, and sold them to an irresponsible purchaser.   It is alleged in the complaint that the firm of auctioneers had conspired with the purchaser to cheat and defraud the plaintiff.   It appeared in the testimony that the defendants had represented to plaintiff that the purchaser was solvent, while in fact he

was insolvent. Evidence was also introduced tending to show that two or more of the defendants had represented to other persons about the same time that the purchaser of the goods in question was in good standing, and that they had likewise assisted him in obtaining credit with other dealers in merchandise. This testimony was sustained by the supreme court of the United States, and while some of the general statements made by the court seem to bear out respondent's contention, yet when we consider the circumstances of the case, and what was actually decided, it will not bear such a construction. The testimony offered tended to show a conspiracy, and a well concerted scheme between defendants and the purchaser to cheat and defraud the merchants of the country, and under all the authorities such a general scheme could be shown to prove the intention of the defendants in the transaction in question. *Butler v. Watkins*, 13 Wall. 456, was a case where the defendants had contracted to manufacture and sell the "Butler cotton tie," an invention on which Butler had procured a patent, agreeing to give Butler a share of the proceeds of sale. The contract was never carried out by the defendant, and Butler sued Watkins and the "Patent Nut and Bolt Company," of which Watkins was the agent. It seems that the defendants were largely interested in the sale of the "Beard," and other cotton ties, and plaintiff alleged that the doings of Watkins & Co. were deceitful and in bad faith from beginning to end; that they entered into the negotiations with the purpose of imposing upon him, and keeping his tie out of the market for that season, and by that means rendering more certain the sale of the Beard and other ties which Watkins & Co. already had control of, and that by reason of such arrangement his tie was kept out of the market during the year 1868, and a larger quantity of the Beard and other ties were thereby sold, to

the benefit of defendants.   Evidence to substantiate the complaint being before the jury, the plaintiff offered in evidence certain letters written by the defendants to Charles Wailey (who, it was said, had also invented a cotton tie), in the spring and summer of 1868, wherein the defendants led the said Wailey to believe that a contract between himself and Watkins, managing director of the company, had been recognized by them, and would be by them carried out; and letters were offered in connection with the testimony of Wailey, for the purpose of showing the fraudulent and deceitful conduct of defendants in keeping Wailey's tie out of the market in the year 1868, in order to advance their own interests by the sale of the Beard tie, with the object of showing to the jury the systematic manner and course of the defendants in fraudulently preventing the sale of other cotton ties.   This testimony was rejected by the trial court, and the supreme court of the United States held that it was admissible.   But the facts laid down in that case bring it also within the rule laid down in *Jordan v. Osgood.*   And so with all the cases cited by appellants. But in the case at bar the transaction sought to be proven was a distinct and independent transaction, having no bearing on the case at issue; all that it could prove to the jury, if they believed it, was that the defendants were tricky men, and that they had cheated some one else in some other land transaction, which was in no way connected with the land involved in this case, or with the party plaintiff.   The mere fact that a man has cheated his neighbor in some transaction does not justify the inference that he has formed a general scheme to cheat other men; the establishing of the fact that a man has lied will not justify the inference that he has formed a general scheme to lie in every business transaction which he has.   If such testimony were admitted, verdicts could be rendered more

with reference to the reputation of the litigants than to the merits of the particular case.

In *Edwards v. Warner*, 35 Conn. 517, it is held that evidence that defendant has been guilty of other like frauds is never admissible for the purpose of showing his bad character, and the greater probability on that account of his having committed the particular fraud charged. In *Commonwe·lth v. Damon*, 136 Mass. 441, the court lays down the rule that in cases in which fraud is involved it has been settled that evidence of fraudulent transactions with other persons will not be admitted upon the question of intent, unless there appears to be some connection between the fraud alleged and the other transactions from which the jury can find a purpose common to all. To the same effect is *Stockwell v. Silloway*, 113 Mass. 384; *Haskins v. Warren*, 115 Mass. 514; *Horton v. Weiner*, 124 Mass. 92; *Commonwealth v. Jackson*, 132 Mass. 16.

We think the admission of the testimony complained of was error which was prejudicial to the rights of defendants, and that they should have a new trial. The other errors alleged seem to us to be without merit, and they are overruled.

For the errors alleged in the first assignment, the judgment is reversed and the cause remanded.

ANDERS, C. J., and HOYT, SCOTT and STILES, JJ., concur.