ANSON E. JOHNSON v. WILLIAM D. GULICK ET AL.

FILED JANUARY 21, 1896.     No. 5903.

1. **Review:** ARGUMENTS. Errors assigned, but not argued, are deemed waived.

2. **False Representations:** ALLEGATIONS AND PROOF. In actions for false representations it is not necessary to aver or prove that the party making them at the time knew they were untrue.

56

3. ———: NEGOTIABLE INSTRUMENTS: EVIDENCE. In a suit upon a promissory note given as part payment for corporation stock, the defense being that the defendants were induced to make such purchase by certain false representations of the plaintiff, testimony showing that prior to such sale he made to other persons similar misstatements in the sale to them of a portion of the same series of stock is irrelevant and immaterial.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.

*Ricketts & Wilson*, for plaintiff in error.

NORVAL, J.

Plaintiff in error brought suit in the court below upon a promissory note for $1,296, purporting to be made by the defendants in error, bearing date January 1, 1891, and payable April 1 thereafter, with interest at eight per cent. The defendants, for answer, admit the execution and delivery of the note, but aver that it was given in renewal of a note of $1,200 executed by the defendants as part consideration of three-fifths of the corporate stock in the Commercial Publishing Company, of Ogden, Utah; that plaintiff, in order to induce the defendants to make said purchase, knowingly and falsely represented to them that said corporation was the owner of a franchise in the Western Associated Press of the value of $4,000; that the defendants relied upon said representations; that the same were false and untrue; and that the defendants have been thereby damaged in the sum of $2,000. The reply was a general denial of each averment of new matter contained in the answer. There was a jury trial, resulting in a finding that there was due the plaintiff from the defendants upon the note declared upon the sum of $1,425.60, and that there was due the defendants upon the counter-claim the sum of $1,389, and the amount of the plaintiff's recovery was assessed at the difference between said amounts, to-wit, $36.60.

Judgment was rendered in accordance with the verdict, and plaintiff brings error.

Thirty-six errors have been assigned, while but one has been argued in the brief of plaintiff. It relates to the rulings of the trial court upon the admission of testimony. All other errors assigned are regarded as waived and will not be considered by the reviewing court. (*Gulick v. Webb*, 41 Neb., 706.)

Upon the trial evidence was introduced tending to establish the allegations of the counter-claim set up in the answer. The defendants, in making out their case, produced and read the deposition of one J. S. Painter, who, after testifying that he and one Murphy, the last of November or the first of December, 1889, which was prior to the sale of the stock to the defendants, purchased of the plaintiff Johnson six-tenths interest in the Ogden *Daily Commercial*, deposed in answer to questions as follows:

Q. State whether or not at the time, while negotiations were pending between yourself and Murphy, as parties of one part, and the plaintiff Johnson, as party of another part, for the purchase and sale of this stock, any statements or representations were made to you by the plaintiff Johnson concerning the Western Associated Press franchise possessed or owned by the Ogden *Daily Commercial*.

A. Yes, sir; there were such representations made. I had a number of conversations with Mr. Johnson in regard to the purchase of the paper. I do not remember just exactly when the first one was had. The second one was had about November 20, 1889. I went into the office and looked it over. Mr. Johnson was not in. I returned to the local editorial room. We went into the editor-in-chief's room, and had a talk about the paper.

Q. What I want to get at is any conversation between yourself and Mr. Johnson about the franchise.

A. I told him I thought I could duplicate good material in the office for $2,000, and he says the franchise was ex-

clusive and was worth $10,000, and that if he was circum-
stanced differently than he was at that time, he would not
take less than $25,000; that it would be worth that in two
years.

Q. What exclusive franchise did he refer to?

A. Associated Press franchise.

Q. As being owned and possessed by the Ogden *Daily
Commercial?*

A. He said so.

Q. Was the representation as to the paper owning and
possessing this Associated Press franchise made to you
more than once by Mr. Johnson?

A. It was made to me on two or three occasions.   Ev-
ery time we talked about the matter it was discussed, be-
cause I looked upon it, from what he said, as being the
most valuable part of the paper.

Each question was objected to at the time the same was
propounded as being incompetent, irrelevant, and immate-
rial, and an exception was duly taken to the overruling of
the objection.   The assignment argued by plaintiff is based
upon the admission of the testimony quoted above.   He
now insists that the objection to receiving the evidence should
have been sustained, because proof of representations made
by the plaintiff to persons other than the defendants does
not tend to establish that the representations charged in
the answer were made as therein stated.   We think this
position sound.   The evidence was clearly inadmissible,
and had the effect to mislead the jury.   From the fact that
the plaintiff made the representations to Painter testified to
by him, the inference cannot be properly drawn that the
same or similar representations were made by plaintiff to
the defendants.   As is stated in 1 Phillips, Evidence, p.
748*: "It is considered, in general, that no reasonable pre-
sumption can be formed as the making or executing of a
contract by a party with one person, in consequence of the
mode in which he has made or executed similar contracts

with other persons.   Still less can a party be affected by
the declarations, conduct, or dealings of strangers.   Trans-
actions which fall within either of these classes are termed
in law *res inter alios acta*, and evidence of this de-
scription is uniformly rejected.   Where the question be-
tween a landlord and his tenant is whether the rent was
payable quarterly or half-yearly, it has been held irrelevant
to consider what agreements subsisted between the land-
lord and other tenants, or at what time their rents would
become due." (1 Greenleaf, Evidence, sec. 53; 1 Wharton,
Evidence, sec. 29.)   In *Somes v. Skinner*, 16 Mass., 360,
it is said : " It is not competent to a party, imputing fraud
to another, to offer evidence to prove that the other has
dealt fraudulently at other times, and in transactions wholly
disconnected with that which is on trial."   Evidence of
other transactions than those under investigation is admis-
sible, but only for the purpose of proving the *scienter* or
intent, when that is in issue in the case.   The defendants
have failed to furnish us either with a brief or oral argu-
ment in this case; hence we are not advised of the theory
upon which they introduced the evidence.   Possibly it was
offered and admitted upon the ground that it was essential
for the defendants to establish the *scienter;* that is, that
the plaintiff, at the time of making the representations,
knew them to be false.   Whether in an action for damages
for false representations it is necessary either to aver or
prove the *scienter*, the authorities do not agree.   The bet-
ter rule, and the one adopted by this court, is that the in-
tent or good faith of the person making false statements is
not in issue in such a case (*Philips v. Jones*, 12 Neb., 213 ;
*Foley v. Holtry*, 43 Neb., 133 ; *Carter v. Glass*, 44 Mich.,
154 ; *Shippen v. Bowen*, 122 U. S., 575); and the trial
court so instructed the jury in the case at bar.   It is true
the answer sets up that the plaintiff knowingly made false
representations, but as it was unnecessary to aver the fraud-
ulent intent, the defendants were not called upon to prove

it. It follows that the evidence introduced to·show that the plaintiff made similar misstatements to persons other than the defendants in the sale to them of a portion of the same series of stock in the Commercial Publishing Company as that sold to defendants, was incompetent and immaterial. For the error pointed out, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.