[No. 5071.   Decided March 23, 1905.]

## YAKIMA VALLEY BANK, *Appellant,* v. CHARLES McALLISTER, *Respondent.*[1]

BILLS AND NOTES—INDORSEMENT—DEFENSES—SIGNATURE OB-TAINED BY TRICK—INTENT OF PARTIES. The maker of a promissory note payable to himself is not liable thereon to a bona fide purchaser for value, where the note was made as the first step in a conditional payment for insurance, under the representation that it could not be negotiated until indorsed upon accepting the policy, and his indorsement was fraudulently secured by a trick whereby his signature to a contract penetrated through the paper on to the back of the note, without his knowledge; since it is not the physical act, but the intention of the parties that consitutes the contract of indorsement, and since the maker was not guilty of any negligent act for which he was responsible to innocent parties.

[1]Reported in 79 Pac. 1119.

SAME—EVIDENCE OF SIMILAR FRAUD UPON OTHER PARTIES. Where insurance solicitors obtained the defendant's indorsement of a note by a device or trick whereby his signature to a contract penetrated through the paper on to the back of the note, without his knowledge, evidence is admissible that other parties living in the neighborhood were induced to give similar notes, and their indorsements were secured by the same solicitors, in the same manner, at about the same time, since it is competent to show that the acts complained of were part of a general scheme to perpetrate this kind of a fraud upon the people of that neighborhood.

APPEAL—HARMLESS ERROR—ERROR IN ADMISSION OF EVIDENCE CURED BY INSTRUCTIONS. The erroneous admission of evidence is cured by expressly withdrawing from the consideration of the jury the issue upon which it was offered.

BILLS AND NOTES—DEFENSES—EVIDENCE — ORDER OF PROOF— GENUINENESS OF SIGNATURES—EVIDENCE OFFERED IN REBUTTAL. In an action upon a promissory note where defendant's signature is denied, it is not error to exclude expert evidence offered only in rebuttal as to the genuineness of the signature, since the burden of proof was upon the plaintiff to establish that as part of its case in chief.

APPEAL—PREJUDICIAL ERROR—ARGUMENT OF COUNSEL. A reversal is not justified by heated expressions of counsel in the argument.

Appeal from a judgment of the superior court for Yakima county, Rudkin, J., entered August 7, 1903, upon the verdict of a jury rendered in favor of the defendant, after a trial on the merits, in an action upon a promissory note. Affirmed.

*Snyder & Preble,* for appellant. The answer in legal effect admits the execution of the note. *Dinsmore v. Stimbert,* 12 Neb. 433, 11 N. W. 872; *Henry v. Hinman,* 21 Minn. 378. Upon an issue of fraud, evidence of other similar frauds is inadmissible. *McKay v. Russell,* 3 Wash. 378, 28 Pac. 908, 28 Am. St. 44; *Johnson v. Gulick,* 46 Neb. 817, 65 N. W. 883, 50 Am. St. 629; *Parker v. Armstrong,* 55 Mich. 176, 20 N. W. 892; *Monitor Plow Works v. Born,* 33 Neb. 747, 51 N. W. 129; *Berghoff v. State,* 25

Neb. 213, 41 N. W. 136; *Commonwealth v. Jackson,* 132 Mass. 16. Its admission was prejudicial. *Jordan v. Osgood,* 109 Mass. 457, 12 Am. Rep. 731. And could not have been cured by an unequivocal charge to the jury to disregard it. *Arthur v. Griswold,* 55 N. Y. 400. It was negligence *per se,* in intending to sign *some* paper, to sign a negotiable instrument without knowing it. 1 Daniels, Negotiable Inst. (4th ed.), § 850; *First Nat. Bank v. Johns,* 22 W. Va. 520, 46 Am. Rep. 506; *Ort v. Fowler,* 31 Kan. 478, 2 Pac. 580, 47 Am. Rep. 501; *Mackey v. Peterson,* 29 Minn. 298, 13 N. W. 132, 43 Am. Rep. 211. The issuing of a negotiable draft was sufficient consideration to make plaintiff a bona fide holder for value. 1 Daniels, Negotiable Inst. (4th ed.), § 187; *Adams v. Soule,* 33 Vt. 538; 1 Edwards, Bills and Notes, § 322.

DUNBAR, J.—This action was brought by the Yakima Valley Bank, a corporation, against the respondent, upon a promissory note for $790.20, dated November 20, 1902, signed on the face thereof by the defendant, Charles McAllister, payable to the order of said Charles McAllister, and purporting to bear his indorsement upon the back thereof. The complaint is the ordinary complaint for recovery upon a negotiable promissory note; alleges execution and delivery of the note by defendant to one J. B. Pugsley, and the transfer before maturity to plaintiff, for a valuable consideration, in the ordinary course of business. The answer denies the execution of the note, and alleges, by way of affirmative defense, that the note was without consideration, in that it was signed on the face thereof by the said defendant in the sum of $790.20, the amount of the annual premium upon a $10,000 life insurance policy upon defendant's life, which said Pugsley and one E. R. Place, associated with Pugsley in business, agreed to thereafter deliver to defendant, upon the express understanding

between defendant, and said Pugsley and Place that the note was not to be binding, and was to be returned to defendant, if, upon an examination of the said policy, defendant would not accept the same, and that defendant did not accept said policy; that the defendant did not intend to sign his name upon the back of said note, but that, as a part of said transaction with Pugsley and Place, he signed his name to a contract releasing the insurance company from liability, in case of his death while said policy was in his custody for inspection, and before he had accepted it, and that, in signing said contract, his signature penetrated through the paper upon which said contract was written, and appeared as an indorsement on said note. This is the substance of the answer. The answer, however, also alleged that the plaintiff had notice of the infirmity of the note, before it paid for the same. This was denied by the reply of the plaintiff. Upon these allegations the case went to trial.

The testimony of the defendant was to the effect that Pugsley and Place solicited him to take insurance in the Home Mutual Life Insurance Society, of New York City, and that he agreed to take a policy for $10,000 on the condition that, when he had examined the policy and had submitted it to his legal advisers, it corresponded with the representations made by the solicitors, and that he was to have until the 1st day of January to determine, the application being made upon the 20th of November, 1902; that the solicitors or agents of the company represented to him that it would be necessary for him to draw up a note, payable to himself and signed by himself, as an earnest of his intention to do business with the company, and that it was also necessary for him to sign a contract releasing the company from liability to him, in case he should die before the final consummation of the contract, they representing to him that the note could not be collected from him with-

out an indorsement, and that he would be safe in giving them the note; that the transaction occurred in the corral of a farm in Yakima county; that he was instructed to sign the application and the release, and that he did so; that a book with several papers upon it, placed there with the ostensible purpose of making it smooth, was handed him to write upon, and a fountain pen furnished by the agents, with the instruction to bear on hard as the pen was stiff; that he was afterwards informed by the bank, the plaintiff, that they had purchased a note signed by him in the sum of $790.20, in favor of himself and indorsed by him on the back thereof. This indorsement he denied having made, his theory being that, by the fraudulent manipulation of the solicitors, the ink had been transmitted through the agreement which he' signed, on to the back of the note, which had been placed there for the purpose of receiving the signature, and that he knew nothing about the note having been indorsed until he was notified by the bank, admitting that the signature was his, or very much like his, and alleging that it was a trick and a fraud; insisting that the signature had been obtained through the perpetration upon him of a trick and a fraud, and that it was not in fact his signature. Judgment was rendered in favor of the defendant.

A demurrer was interposed to the affirmative answers of the defendant, which was overruled, and the action of the court in overruling the demurrer is the first error assigned—the appellant contending, that the allegations of fraud do not amount to a denial that the defendant indorsed the note; that the answer, in legal effect, admits the execution of the note, and at most only tenders issue as to its validity; that the charges of *mala fides* are not distinctly set forth, so that plaintiff may know the charges he has to meet; and that, if the note was indorsed through the physical act of the defendant, he is responsible for the

payment of the note, and for the results of that physical act to an innocent purchaser. This we think is not the law under any authority. It is not the physical act which constitutes a transaction of this kind, but it is the intention of the parties to the contract. It is true that, if a party, by any negligent act, is the cause of an investment made by an innocent person on the strength and credit of that act, he cannot escape liability; but, if the matters set forth in the answer are true, there was no action on the part of the defendant at all, so far as indorsing the note was concerned. The indorsement was the effect of a fraudulent device and trick, which the defendant was in no way responsible for.

Several succeeding assignments are based upon the action of the court in admitting, over the objection of the appellant, the testimony of numerous witnesses to the effect that Pugsley and Place had perpetrated, in the judgment of the witnesses, the same fraud upon them in like transactions. It was testified by witnesses O'Neil, Purdin, Kandle and Chamberlain that, during the same month in which this transaction with respondent occurred, these solicitors had obtained their indorsement of notes in the same manner, and under the same circumstances, which were related on the witness stand by the respondent; and it is noticeable that there was a similarity of methods in each instance. The business was not transacted as it ordinarily is in a house or upon a table, but the plan was to obtain these signatures out of doors, by the buggy in which these men traveled, and in each instance, with one exception, the signatures were written upon a pocket book with documents and papers on top of it, under circumstances that would not be as liable to challenge the attention of the parties signing as would the interposition of the note under the agreement signed upon a table. In each instance these parties swore that they did not indorse the note which

they had made out to themselves, and knew nothing about their having executed such a note until notice came to them to that effect from the bank, and that they had paid the notes rather than risk a lawsuit with the company, in many instances the notes being small.

It is insisted by the appellant that this testimony was inadmissible, and reliance is placed upon the case of *McKay v. Russell,* 3 Wash. 378, 28 Pac. 908, 28 Am. St. 44; and it might appear at first blush that that case was in point in favor of appellant's contention.    In that case, which was an action to recover money paid upon a contract for the sale of real estate, on the ground that the sale was procured by fraudulent representations, it was held that it was inadmissible to show that, in a similar transaction prior thereto, defendants had made like misrepresentations to another party.    But an examination of that case fails to show that there was any testimony offered that would show a general scheme connecting the transaction, which it was sought to prove, with the transaction which was in issue in the case.    It is no doubt true, as a general proposition, that testimony tending to show that a person has committed another crime is not admissible for the purpose of showing the probability of his commission of the crime charged.    But it is equally true that it is competent to show a general scheme to defraud, so connected with the case under consideration, by time and circumstances, that it will have a tendency to raise the presumption that the fraud charged was a part of the general scheme so proven. This court held, in *Oudin v. Crossman,* 15 Wash. 519, 46 Pac. 1047, that, in an action to recover a sum of money which plaintiff had been induced to pay for the purchase of a mine, in reliance upon false representations of the defendants, evidence was admissible showing that the defendants had made representations to other parties than plaintiff, and to people in the vicinity generally, regarding

the existence and character of the mine and the value of its ores, such representations being part of one continuous scheme or transaction for the purpose of selling the mine to any one that could be induced to buy. And so, in this case, the testimony, if true, showed conclusively a general scheme to perpetrate this particular kind of a fraud upon the people of a certain neighborhood at the same time, for the purpose of selling them insurance policies. The rule is thus clearly announced in 14 Am. & Eng. Ency. Law (2d ed.), pp. 196 and 197:

"A charge of fraud in a particular transaction cannot be proved by evidence of other and independent frauds of the party charged, though in a similar transaction, unless it appears that there is such a connection between the transactions as to authorize the inference that the frauds are both parts of a general scheme or purpose to defraud. . . . If the other fraud as to which evidence is offered is similar in character to the fraud alleged, and so connected with the transaction under investigation in point of time and otherwise as to reasonably authorize the inference that both frauds were in pursuance of a general scheme or purpose to defraud in such cases, the evidence is admissible. This is well settled as a general rule, though in its application there is not entire unanimity in the cases. The chief reason for admitting evidence of other frauds in such a case is that, where transactions of a similar character by the same party are closely connected in time, the inference is reasonable that they proceed from the same motive."

The supreme court of the United States has spoken plainly on this proposition in *New York Mut. L. Ins. Co. v. Armstrong*, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997. Suit was brought by an assignee of a policy of life insurance, obtained on the application of the assured at the instigation of the assignee, to recover of the insurers, after the death of the assured; and the defendants set up that it

was plaintiff's purpose, in procuring the insurance to be obtained, to cheat and defraud defendants, and offered to show that he effected insurances upon the life of the assured in other companies at or about the same time, for the like fraudulent purpose; and it was held that the testimony was admissible.    In the course of the opinion, it is said:

"A repetition of acts of the same character naturally indicates the same purpose in all of them; and if when considered together they cannot be reasonably explained without ascribing a particular motive to the perpetrator, such motive will be considered as prompting each act;"

citing *Butler v. Watkins,* 13 Wall. 456, 20 L. Ed. 629, where it was said:

"In actions for fraud, large latitude is always given to the admission of evidence.    If a motive exist prompting to a particular line of conduct, and it be shown that in pursuing that line a defendant has deceived and defrauded one person, it may justly be inferred that similar conduct towards another, at about the same time and in relation to a like subject, was actuated by the same spirit."

This case also cites many cases in support of this view of the law.    We think that, while it is difficult to apply the rule to varying circumstances, the circumstances surrounding these transactions, as shown by the testimony, bring the case squarely within the rule that testimony tending to show a general scheme to perpetrate a fraud is admissible.

But, even if the admission of this testimony had constituted reversible error, it was cured by the instructions of the court, which we think were more favorable to the appellant than. they should have been.    After the conclusion of the testimony the court, evidently taking the view of the law that this testimony could not be admitted, as against a bona fide purchaser of the note, instructed the jury as follows:

"This case has been tried upon two theories, and evidence has been received here by the court in support of each

theory. Part of the testimony received here, in the opinion of the court, is entirely competent in support of one of these theories, but it is incompetent in support of the other theory. These two theories are these: First, that the plaintiff in this action was a bona fide holder of the promissory note in suit, and second, that the plaintiff was not a bona fide holder of the promissory note in suit."

Then the court proceeds to state what a bona fide holder is and says:

"Under the admitted facts in this case, I charge you as a matter of law that the plaintiff in this action is a bona fide holder of the note in suit."

Continuing, the court says:

"Certain testimony was received here tending to show that other notes were received by these parties by the same means. In the opinion of the court this testimony was competent as tending to show that the note was obtained by fraud and without consideration. But these questions of fraud and failure of consideration the court now withdraws from you, and I charge you, as a matter of law, that you cannot consider in this trial the testimony relating to the other acts, if any, committed in this case. In other words, proof tending to show other forgeries, or tending to show the obtaining of other notes under like circumstances, is not competent as to whether this note was or was not indorsed, and you cannot consider it in that light. The only question that I will submit to you, as I have stated, is the one in answer to the question as to whether this defendant indorsed his name on the back of this note."

It is alleged that the court erred in that part of the instruction quoted above, viz.: "In the opinion of the court this testimony was competent as tending to show that the note was obtained by fraud and without consideration." But a glance at the instructions in the record shows that the court withdrew this testimony from the consideration of the jury by withdrawing from their consideration the question of fraud and failure of consideration, as affecting

a bona fide holder. We will not specially review the alleged errors in refusing to instruct, for we think the instructions of the court, as given, covered the whole case, and were favorable to appellant. Nor did the court err in refusing to admit the so-called expert testimony in relation to the genuineness of the signature. The signature had been denied by the answer, and the burden, under such circumstances, was upon the plaintiff, in its case in chief, to prove the signature, and being offered only in rebuttal it was not competent. Nor do we think that the somewhat heated expressions of counsel in the argument of the case would justify a reversal of the judgment.

No discernible error appearing in the record, the judgment is affirmed.

MOUNT, C. J., HADLEY, and FULLERTON, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.