[No. 12253.   Department Two.   June 16, 1915.]

T. RYAN, *Respondent*, v. S. L. DOWELL, *Appellant*.[1]

EVIDENCE—OTHER TRANSACTIONS—FRAUD—GENERAL SCHEME.   In an action to recover for fraud practiced upon a street contractor in selling sand and gravel, through the manipulation of a duplicating pad of delivery slips and receipts, whereby two receipts were obtained for a single delivery, resulting in overpayments, it is admissible to prove that the defendant had defrauded another street contractor in the same way at about the same time; since it reasonably authorizes the inference that each of the frauds was in pursuance of a general scheme and proceeded from the same motive.

WITNESSES—CROSS-EXAMINATION—REBUTTAL.   Where, in an action for fraud in duplicating delivery slips for gravel sold, resulting in overpayments, a witness for defendant had endeavored to make it appear that a discount had been given to avoid trouble rather than because duplicates had been discovered, it was competent, on cross-examination, to show that the discount was equal to the entire profit on the contract.

EVIDENCE—DOCUMENTARY EVIDENCE—DUPLICATES—COMPARISONS—FRAUD.   In an action for fraud in manipulating a delivery pad so as to produce duplicate receipts for a single delivery, resulting in overpayments, the slips delivered to plaintiff are admissible for the purpose of comparison by the jury.

ACCOUNT STATED—WHAT CONSTITUTES—SETTLEMENTS—FRAUD—OVERPAYMENTS.   In an action for fraud in manipulating a delivery pad so as to produce duplicate receipts for a single delivery, resulting in overpayments, the fact that the bookkeepers of the respective parties met monthly and checked over the slips showing the amounts delivered and agreed upon the quantities, does not make the agreements an account stated, or preclude the plaintiff from showing the truth of his allegations that, by reason of the fraud in relation to the slips, he was misled as to the amounts delivered.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered May 9, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action for fraud.   Affirmed.

*William Wray*, for appellant.

*Gill, Hoyt & Frye*, for respondent.

[1]Reported in 149 Pac. 343.

FULLERTON, J.—In the last half of the year 1913, the respondent, who was plaintiff below, paved certain streets of the city of Seattle under contract with the city. In the work of paving, he was required to use sand, gravel and cement, and these he purchased from the appellant to be delivered as needed at the place of use, at prices per yard for the sand and gravel and prices per barrel for the cement, mutually agreed upon. During the progress of the work, partial accountings were had monthly between the parties, and payments were made to the appellant by the respondent on the basis of such accountings.

As a means of keeping an account of the quantities of materials delivered, the appellant furnished his deliveryman with salesman's pads, bound in tablet form, with alternating white, yellow and pink slips. The white and yellow slips were carbonized on their backs, and the three were so bound together in the pads that a writing on the white slip would reproduce in the same relative position on the yellow and pink slips. On the delivery of materials of any sort, the kind and quantity thereof would be written on the white slip by the deliveryman. The pad would then be handed to the person receiving the material, who would write his name on the white slip as a receipt. The yellow duplicate would then be torn from the pad and delivered to the receiver, and the white and pink slips retained for the use of the appellant. From these slips, the quantities delivered between the times of the settlements were made up; the respondent relying for the accuracy of the account upon the signatures of his foreman and assistants as they appeared upon the white slips, rather than upon the duplicate slips delivered to him.

As the work neared its close, the respondent conceived that he had been overreached and defrauded in these partial settlements; that the actual quantities of sand, gravel and cement delivered was much less than the claimed quantities, and that he had been induced to pay for a large quantity of such materials in excess of that actually delivered.

The present action was instituted to recover the overpayments. On the trial, the respondent's evidence tended to show that he had been overreached by the fraudulent manipulation by the deliveryman of the slips in the pads mentioned. As the pads were prepared and put together by the manufacturer, a writing on the white slip would reproduce only on the succeeding yellow and pink slips. But it was found that, by removing the pink slips, the writing on the white slip could be made to reproduce on two or more succeeding white and yellow slips, thus duplicating the signatures on the white slips, and enabling the appellant to turn in two or more such slips for a single delivery; that such slips were actually duplicated by the process mentioned and afterward turned in, enabling the appellant to receive, as the jury found, an excess payment for the three articles mentioned of the sum of two thousand dollars.

In the course of the trial, over the objection of counsel, the respondent was permitted to show that the appellant had used the same means to defraud other contractors with whom he had contracts to furnish sand, gravel and cement, who were engaged in making street improvements in the city of Seattle at the time the respondent was so engaged; and was also permitted to show by a witness, who had formerly been an employee of the appellant, that the witness had manipulated the pad books in the manner indicated on one such contract, under the express direction and instruction of the appellant.

It is the appellant's contention that this testimony was erroneously admitted, on the principle that, in civil as well as in criminal actions, evidence of the commission of another act of fraud or crime is not admissible to prove the fraud or crime charged. The case of *McKay v. Russell*, 3 Wash. 378, 28 Pac. 908, 28 Am. St. 44, is cited as sustaining the contention. That was an action to recover money paid on a contract for the sale of real estate, on the ground that the contract was procured by fraudulent representations. It

was held that it was not competent to show that, in a similar transaction with another person had prior thereto, the defendant had made like misrepresentations. It would seem, on first impression, that the case might be in point; but the respondent calls attention to the case of *Yakima Valley Bank v. McAllister*, 37 Wash. 566, 79 Pac. 1119, 107 Am. St. 823, 1 L. R. A. (N. S.) 1075, where an exception to the general rule announced in the earlier case was noticed, and makes the claim that the present case falls within the exception. The last cited case was an action upon a promissory note. The defense was that the endorsement thereon, by which alone the defendant could be bound, was not written by the defendant as an endorsement of the note, but was written in the belief that he was signing another instrument not creating a liability, for which instrument the persons conducting the transaction had fraudulently substituted the note. It was held admissible to show that the same parties, by similar methods, at about the same time, had procured endorsements of notes from other persons. In distinguishing the cases, this language was used:

"It is insisted by the appellant that this testimony was inadmissible, and reliance is placed upon the case of *McKay v. Russell*, 3 Wash. 378, 28 Pac. 908, 28 Am. St. 44; and it might appear at first blush that that case was in point in favor of appellant's contention. In that case, which was an action to recover money paid upon a contract for the sale of real estate on the ground that the sale was procured by fraudulent representations, it was held that it was inadmissible to show that, in a similar transaction prior thereto, defendants had made like misrepresentations to another party. But an examination of that case fails to show that there was any testimony offered that would show a general scheme connecting the transaction, which it was sought to prove, with the transaction which was in issue in the case. It is no doubt true, as a general proposition, that testimony tending to show that a person has committed another crime is not admissible for the purpose of showing the probability of his commission of the crime charged. But it is equally true

that it is competent to show a general scheme to defraud, so connected with the case under consideration, by time and circumstances, that it will have a tendency to raise the presumption that the fraud charged was a part of the general scheme so proven. This court held in *Oudin v. Crossman,* 15 Wash. 519, 46 Pac. 1047, that, in an action to recover a sum of money which plaintiff had been induced to pay for the purchase of a mine, in reliance upon false representations of the defendants, evidence was admissible showing that the defendants had made representations to other parties than plaintiff, and to people in the vicinity generally, regarding the existence and character of the mine and the value of its ores, such representations being part of one continuous scheme or transaction for the purpose of selling the mine to any one that could be induced to buy. And so, in this case, the testimony, if true, showed conclusively a general scheme to perpetrate this particular kind of a fraud upon the people of a certain neighborhood at the same time, for the purpose of selling them insurance policies. The rule is thus clearly announced in 14 Am. & Eng. Ency. Law (2d ed.), pp. 196 and 197.

" 'A charge of fraud in a particular transaction cannot be proved by evidence of other and independent frauds of the party charged, though in a similar transaction, unless it appears that there is such a connection between the transactions as to authorize the inference that the frauds are both parts of a general scheme or purpose to defraud . . . If the other fraud as to which evidence is offered is similar in character to the fraud alleged, and so connected with the transaction under investigation in point of time and otherwise as to reasonably authorize the inference that both frauds were in pursuance of a general scheme or purpose to defraud in such cases, the evidence is admissible. This is well settled as a general rule, though in its application there is not entire unanimity in the cases. The chief reason for admitting evidence of other frauds in such a case is that, where transactions of a similar character by the same party are closely connected in time, the inference is reasonable that they proceed from the same motive.' "

The present case, we think, falls within the rule of the later case, rather than the rule of the earlier one. The fraud as

to which the evidence was offered was similar in point of time and circumstance to the fraud alleged, and reasonably authorized the inference that each of the frauds was in pursuance of a general scheme and proceeded from the same motive.

In the cross-examination of a Mr. Grover, a witness for the appellant, the following appears:

"Q. Now in the Normile & Petler account where you allowed them thirty yards out of 147 or 150 approximately, that allowance of thirty yards would more than eat up any profit you could make on that job, wouldn't it? Mr. Wray: That is objected to as calling for a conclusion. The Court: Objection overruled. A. I don't think so. Q. In other words there is more than 25 per cent profit in the sand and gravel business? Mr. Wray: That is objected to, if the Court please. The Court: Objection overruled. Mr. Wray: I desire an exception. Q. What is your answer to that? A. I don't suppose,—no it wouldn't be all the profit. It wouldn't leave very much to us though. Q. There would be some profit after the 25 per cent was allowed, would there? A. Well, yes. He said he would allow the whole thing though rather than have a dispute over it."

This is assigned as error because not proper cross-examination. But we think it proper cross-examination. The witness had endeavored to make it appear that the discount concerning which he was testifying was given to avoid trouble, rather than because duplicates in the account slips had been discovered, and clearly it was competent, as combating the reason given, to show that the discount made was equal to the entire profit on the contract.

The respondent was also permitted, over the objection of the appellant, to introduce in evidence certain of the yellow slips delivered to him claimed to be duplicates, so that the jury might themselves make a comparison. We can see no error in the court's ruling. The very question in dispute was whether certain of the receipts had been duplicated, and either the receipts themselves, or their duplicate copies made by the appellant, were admissible to prove the fact.

The court gave to the jury, among others, the following instructions:

"If you find from the evidence that the white slips obtained by the defendant, or any of them, were obtained by fraud and did not represent material actually delivered, then you are at liberty to disregard the account of the defendant and estimate the amount of material actually furnished by defendant to the plaintiff from the other evidence in the case."

There was evidence tending to show that the bookkeepers of the respective parties met monthly during the continuance of the contract and checked over the slips showing the amount of materials delivered up to the times of the meetings, and agreed upon the quantities. It is the appellant's contention that the agreements became accounts stated, and that the court's instruction was erroneous in that it permitted the jury to regard them otherwise than as conclusive between the parties. But aside from the fact that we think the evidence shows that these agreements were but tentative at best, the respondent alleged that, by reason of fraud perpetrated by the appellant in relation to the slips on which the settlements were based, he was misled into believing that a greater quantity of materials had been delivered than was actually delivered. Clearly, under these circumstances, the respondent was not estopped from showing the truth.

There is no error in the record, and the judgment will stand affirmed.

MORRIS, C. J., ELLIS, MAIN, and CROW, JJ., concur.