[No. 17906.   Department One.   October 10, 1923.]

# D. K. MAY et al., Appellants, v. JOSEPH C. ROBERTS, Respondent.[1]

EVIDENCE (58, 60)—RELEVANCY—SIMILAR FACTS—RES INTER ALIOS ACTA—FRAUD—INTENT. Upon an issue as to false representations made, inducing the sale of stock, similar acts or representations are not admissible except to show the intent or knowledge in the particular case, or to show a system or plan of which the particular acts were a part; and in an action for false representations, for which there is a liability even if innocently made, and in which intent or motive are not involved, such evidence is not admissible.

Appeal from a judgment of the superior court for Spokane county, Gilliam, J., entered April 25, 1922, upon the verdict of a jury rendered in favor of the defendant, in an action upon contract. Reversed.

*James Emmet Royce,* for appellants.

*Turner, Nuzum & Nuzum* and *Wakefield & Witherspoon (H. T. Davenport,* of counsel), for respondent.

BRIDGES, J.—With the assistance of the respondent, the appellants borrowed $10,000 from a man by the name of Stewart, and gave their promissory note therefor. It was secured by certain capital stock of the Gibson Mining Company, of which they were promoters. In order to assist the appellants in getting the money, the respondent also put up to Stewart, as collateral security, certain of his own personal property. Later, it is alleged, there was an agreement between the appellants and the respondent whereby the latter, in consideration of receiving a portion of the capital stock of the mining company, assumed and agreed to pay the Stewart note. This he failed to do. Judgment was taken against the appellants on the note,

[1]Reported in 219 Pac. 55.

and they here seek to recover of respondent on account of his agreement.

One of respondent's defenses was that he was induced to make the agreement solely because of representations made by the appellants to him concerning the mines in question, in that they had told him that the titles were perfect and were unencumbered and that they had invested some $30,000 of their own private money in the property and its development, and that they intended to use the $10,000 borrowed for a like purpose, and that all of such representations were untrue. On the trial, the respondent testified concerning these representations and introduced in evidence, over the objections of the appellants, the testimony of several persons who had bought some of the same mining stock of or through the appellants about the same time and that appellants had made the same representations to them, and that they were untrue.

The chief question here is whether it was error to receive the last mentioned testimony. There is nothing to show that the representations made to the third parties were made in the presence of the respondent or that he knew of them, or that he had knowledge that they had been made or relied thereon. Before examining this question in detail it may be well to read the general rule as laid down by one or two authorities.

10 R. C. L. 938, says:

"When there is a question whether a person said or did something, the fact that he said or did something of the same sort on a different occasion may be proved, if it shows the existence on the occasion in question of any intention, knowledge, good or bad faith, malice, or other state of mind, or of any state of body or bodily feeling, the existence of which is in issue, or is deemed to be relevant to the issue. Indeed, when the knowl-

edge and intent of a party is a material fact, proof of matters apparently collateral is admissible in many cases, both civil and criminal. If the question be whether a given act was accidental or intentional, the fact that the actor has at numerous times performed similar acts under circumstances excluding the idea of accident is very strong proof that the act under investigation was also intentional.''

In Greenleaf on Evidence, Vol. 3, § 15, it is said:

''In the *proof of intention,* it is not always necessary that the evidence should apply directly to the particular act, with the commission of which the party is charged; for the unlawful intent in the particular case may well be inferred from a similar intent, proved to have existed in other transactions done before or after that time.''

Let us now examine our own cases on this subject.

In *McKay v. Russell,* 3 Wash. 378, 28 Pac. 908, 28 Am. St. 44, the facts were that the appellants were the owners of some lots in the town of Ballard, King county, in this state, and sold a few thereof to the respondent. Later the respondent sought to rescind the sale on the ground that appellants had misrepresented to him the size and location of the lots. On the trial he offered, and the court received, the testimony of another person to the effect that at about the same time appellants had sold him certain lots in the same townsite, making to him the same representations. We held that the testimony of the third party was inadmissible, quoting from Greenleaf on Evidence as follows:

'' 'In some cases, however, evidence has been received of facts which happened before or after the principal transaction, and which had no direct or apparent connection with it; and therefore their admission might seem, at first view, to constitute an exception to this rule. But those will be found to have been cases in which the knowledge or intent of the party

was a material fact, on which the evidence, apparently collateral and foreign to the main subject, had a direct bearing, and was, therefore, admitted'.''

In *Carnahan v. Moore*, 70 Wash. 623, 127 Pac. 195, we held that in an action for damages for deceit in misrepresenting the price paid by the defendants for a certain tract of land, one-half of which was bought by the plaintiff, evidence of similar representations to another party who took the other half of the land was admissible, as tending to show the representations made by the plaintiff, because the two sales were parts of one and the same transaction. The ruling in this case is squarely based on that in *Oudin v. Crossman*, 15 Wash. 519, 46 Pac. 1047, where we said, concerning certain objectionable proof:

''This testimony related to representations made by the defendants, or by Charles Crossman, the husband, regarding the existence and character of the mine in controversy, and as to the value of the ores therein contained. It is urged that the same is inadmissible on the ground that the representations were not specifically made to the plaintiff, but were made to other parties, or to the people in the vicinity generally. We think this testimony was admissible. It is evident that the purpose of the defendants was to sell the mine to anyone that could be induced to purchase it, and that it was all one continuous scheme or transaction, and the plaintiff was not precluded from showing such representations, made in furtherance of that purpose, although the same were not made to him personally.''

In *Yakima Valley Bank v. McAllister*, 37 Wash. 566, 79 Pac. 1119, 107 Am. St. 823, 1 L. R. A. (N. S.) 1075, we held that, where insurance solicitors obtained the defendant's endorsement of a note by device or trick, evidence is admissible that other parties living in the neighborhood were deceived by the same device and trick into giving similar notes, because it is

always competent to show that the acts complained of were part of a general scheme to perpetrate a fraud upon the people of the neighborhood.

The case of *Ryan v. Dowell,* 86 Wash. 76, 149 Pac. 343, was in principle very similar to the case last cited and we followed it.

In *State v. Smith,* 103 Wash. 267, 174 Pac. 9, we said:

"There is no more insidious and dangerous testimony than that which attempts to convict a defendant by producing evidence of crimes other than the one for which he is on trial, and such testimony should only be admitted when clearly necessary to establish the essential elements of the charge which is being prosecuted. To establish guilty intent, unlawful motive, or criminal knowledge, it is permissible to show that the act charged against the defendant was one in a series of criminal ones; but beyond this, the state cannot go and, for the purpose of securing a conviction, show the perpetration of other similar acts, even though committed in furtherance of a general scheme, where there is no proof required to establish intent, motive or knowledge, other than proof of the act charged itself."

In *Great Western Motors v. Hibbard,* 112 Wash. 541, 192 Pac. 958, the appellant sold an automobile to respondent, representing that it was a new machine of a 1918 model, and later respondent sought to rescind on the ground of misrepresentation, in that the machine was an old one and was a 1917 model. He offered, and the court received, testimony from a third party to the effect that the appellant had previously sold him the same machine upon the same representation. We held that such testimony was inadmissible, taking the position that, in making the representation, intent was wholly immaterial, because the result to the respondent would have been the same whether appellant intentionally or unintentionally made the misrepresentations, and that since intent was not involved in the case,

proof of prior similar misrepresentations concerning the same machine was not admissible. We said:

"If in a given case, such as we find this to be, it is unimportant to show knowledge or intent in establishing a cause of action, it is manifestly dangerous, and insidiously unfair to an adversary, to introduce evidence of prior independent conduct for the purpose of convincing a jury that the principal transaction—the one upon which the trial is had—was prompted by an intention to cheat and defraud."

It is, of course, the general rule in civil cases that testimony may not be received concerning similar acts, conduct or representations for the purpose of proving the particular act or representation charged in the complaint. But there are certain exceptions to the general rule. The exceptions found in all or some of the authorities we think may be stated thus: (1) proof of separate but similar acts or representations may be received for the purpose of tending to show the intention, motive or knowledge of the defendant in connection with the act or representation upon which the action is based; (2) if several similar acts or representations are so connected that they form an inseparable part of the act or representation upon which the suit is based, and a complete account of the latter cannot be given without detailing the particulars of the former, then evidence concerning the former may be received; (3) some cases hold that other similar acts or representations may be shown for the purpose of proving that a system or scheme existed to do a certain act or to defraud and that the act or representation charged in the complaint was a part of such system or scheme; (4) there are also cases which hold that where conspiracy is involved such independent acts or conduct may be received as throwing light on the particular act or conduct at issue.

The first exception to the general rule is universally recognized. It often becomes necessary to prove the motive or intent with which a party acted, and since those things are but mental states and very difficult of proof, the rule is relaxed by permitting other similar acts or statements to be shown, as tending to prove the intent, motive or knowledge in the particular instance. Where intent, motive or knowledge is not involved, testimony of such independent acts or representations will not be admissible. The authorities pretty generally recognize the second exception, although from its nature it is not applicable to very many cases. We do not understand that respondent takes the position that this case comes within the first, second or fourth exception. He claims that it comes within the third exception noted, in that proof of a series of the same class of misrepresentations tends to prove a scheme or system formed by the appellants whereby they might cheat those who should purchase their mining stock. Unless there is intent, purpose or knowledge involved in the case, there is no logic in saying that proof of other acts or representations tending to prove a scheme, system or a conspiracy, is receivable in evidence to prove a particular act or representation. In other words, both the third and fourth exceptions to the general rule are but branches of the first exception, and testimony of other independent acts or representations, similar to those involved, for the purpose of showing a system or scheme of action or a conspiracy is material only where the scheme, system or conspiracy itself is important, as tending to show the motive, intent and purpose of the particular act under investigation. These elements are nearly always essential in an action of pure fraud, and in such an action the courts have generally received testimony concerning

other similar acts or representations for the purpose of tending to show the fraudulent intent or purpose in the particular case.

The question at bottom, then, is, is the intention or purpose of the appellants in making the representations charged against them essential elements in this case. This is not an action based on fraud, but one founded on misrepresentations of fact inducing action thereon. In actions of the former kind, intent and motive are nearly always essential features and must be proven. But the courts are not in harmony on the question whether they are involved in actions based on misrepresentations of fact, in such a case as this.

In those states where the scienter is an essential part of this kind of action, proof of other similar but independent acts or representations may be received for the purpose of showing the purpose or intent in doing or making them.

In *First National Bank v. Wise,* 151 N. W. (Iowa) 495, the court said:

"Defendant was permitted to show that Wixel, the agent who sold the stock, had made similar false representations in negotiating or attempting to negotiate sales of the company's stock to other persons. In cases involving alleged fraud and false representations, proof of like or similar representations made to others by the party so charged, at or near the same time, and in connection with transactions of a like character, is quite generally held admissible as tending to show knowledge and fraudulent intent."

The courts of that state hold that intent is a necessary ingredient to an action for misrepresentations. A few of the other cases holding to a similar doctrine are these: *Gibson v. Seney,* 138 Iowa 383, 116 N. W. 325; *Coile v. Order of United Commercial Travelers of America,* 161 N. C. 104, 76 S. E. 622; *Horton v. Weiner,*

124 Mass. 92; *Chisholm v. Eisenhuth,* 69 App. Div. 134, 74 N. Y. Supp. 496; *Loftus v. Sturgus,* 167 S. W. (Tex. Civ. App.) 14; *Hartford Life Ins. Co. v. Hope,* 40 Ind. App. 354, 81 N. E. 595, 1088. In all of these cases and many others holding that testimony of similar acts or representations may be received, it is expressly stated that it is admissible only for the object of showing the intent or purpose.

This court has long since held that motive and intent are not essential parts of an action of this character. In the case of *Hanson v. Thompkins,* 2 Wash. 508, 27 Pac. 73, the suit was by the plaintiff to recover on a promissory note given by the defendant, and the defense was misrepresentations inducing the purchase of the land and the giving of the note. The trial court instructed the jury that if the plaintiff represented that there were 36½ acres in the tract although, as a matter of fact, there were only 26½ acres, they could not find against him unless they also found that he knew the representations were false and made them with that knowledge, intending to deceive. We held the instruction to be erroneous, saying:

"If he knew the lot did not contain thirty-six and one-half acres, and represented to defendants that it did, he would be guilty of fraud and deceit; but if he did not know it, and believed that the representations he made were true, and defendants, acting upon such representations, were damaged because it eventuated that they were not true, the liability of the plaintiff would be the same. In neither case will he be allowed to retain the benefit flowing from his misrepresentation."

Again, in the case of *Sears v. Stinson,* 3 Wash. 615, 29 Pac. 205, we said:

"The principal contention of the defendant is, that to support an action of this kind it must be alleged and proven, not only that the representations made and

relied upon by the purchaser are untrue, but that they must have been known to have been untrue by the vendor. While it cannot be disputed that a great deal of authority can be marshalled which will support that theory, it is also true that the theory of respondent is equally sustained by authority, and we think by the better reasoning.''

In *Lawson v. Vernon,* 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880, in a case somewhat similar to this, we said:

''The prevailing doctrine is that, if a person states as true, as of his own knowledge, material facts susceptible of knowledge, to one who relies and acts thereon to his injury, he cannot defeat recovery by showing that he did not know that his representations were false, or that he believed them to be true. The falsity and fraud consists in representing that to be true which he did not know to be true.''

In *West v. Carter,* 54 Wash. 236, 103 Pac. 21, after reviewing our previous decisions, we said:

''And this is the just theory, for the result to the party who is deceived is exactly the same whether the intention of the party upon whose representations he relied was fraudulent or not. If one by misrepresentation, even though innocent, is the cause of damage and injury, it would certainly be inequitable to visit that damage and injury upon the head of one who was in no way to blame, rather than upon the one who was the cause of such damage or injury.''

Finally, in the case of *Great Western Motors v. Hibbard, supra,* we again declared the same doctrine, saying:

''But what difference it could make to the respondent as to whether or not appellant knew better, or intended to deceive, it is difficult to perceive. Had the appellant, through its agent, candidly mistaken the year of the manufacture of the car and that it was unused and nevertheless misled the respondent in those respects

in consummating the sale, under circumstances entitling him to recover, the resulting damage to him would have been the same as that complained of in this suit."

It is immaterial whether appellants made the representations (if they were made) innocently, believing them to be true, or fraudulently, knowing them to be false; the result to the respondent would be the same in either event if he relied on them. The question is, were misrepresentations made and not the purpose or intent in making them.

We may sum up our conclusions as follows: Similar but independent acts or representations may not be received in evidence except to show the intent, purpose or knowledge of the person charged with the representations in the particular action, and since purpose, intent and knowledge are not involved in a case of this character, testimony concerning them would be wholly immaterial. The following cases support the theory we have adduced: *Johnson v. Gulick* 46 Neb. 817, 65 N. W. 883, 50 Am. St. 629; *Standard Mfg. Co. v. Slot,* 121 Wis. 14, 98 N. W. 923, 105 Am. St. 1016; *Clark Co. v. Rice,* 127 Wis. 451, 106 N. W. 231; *Orient Land Co. v. Reeder,* 173 S. W. (Tex. Civ. App.) 939; *Ogden Valley Trout & Resort Co. v. Lewis,* 41 Utah 183, 125 Pac. 687.

The view we have expressed is supported by the following of our own cases: *McKay v. Russell, supra; State v. Smith, supra; State v. Bokien,* 14 Wash. 403, 44 Pac. 889; *Great Western Motors v. Hibbard, supra.* Our conclusions reached in *Ryan v. Dowell, supra* and *Yakima Valley Bank v. McAllister, supra,* are in no respect opposed to what we have here said, because those were cases of pure fraud, where intent was of the very essence of the case. It must be admitted that

it is more difficult to harmonize our view as now expressed with the holdings in *Carnahan v. Moore, supra,* and *Oudin v. Crossman, supra;* although it is possible to distinguish those cases upon their peculiar facts.

Respondent in his supplemental brief contends that no sufficient objection was made to the proof under discussion. We think there was. The statement of facts shows that when the respondent offered his first witness on this matter the appellant's counsel objected, for the reason that the testimony would be incompetent, irrelevant and immaterial and not responsive to any issues in the case. At first the trial court sustained the objection. A recess was then taken and evidently an argument was made by respective counsel, and when the jury was recalled the court changed its ruling and allowed the testimony to be received. Manifestly not only was the objection sufficient but the particular reasons therefor were called to the attention of the court.

It took several days to try this case, and it is regrettable that it must be reversed. Other matters upon which claims of error are assigned are not likely to occur at a new trial and we think it not necessary to discuss them here.

For the reasons given, the judgment is reversed and the cause remanded for a new trial.

Main, C. J., Mackintosh, and Mitchell, JJ., concur.