THE PEOPLE'S BANK OF MINNEAPOLIS, *Appellant,* v.
DAVID W. REID *et al., Appellees.*

No. 17,352.

SYLLABUS BY THE COURT.

1. CONTRACT—*Fraud—Evidence.* When it is alleged that a contract to supply water for irrigation and to purchase for the grantee certain land was fraudulent and not carried out by the grantor it is competent to show that the same party made similar but not identical contracts with other grantees about the same time which were not carried out, as tending to show system, motive or intent.

2. NEGOTIABLE INSTRUMENT—*What Constitutes Notice of Infirmity.* Before the holder of a promissory note negotiated to him in due course before maturity can be charged with notice of an infirmity therein or defect in the title of the party negotiating it, he must be shown to have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith. An instruction which modifies this rule by charging that this knowledge means "such knowledge of facts as a reasonable prudent and cautious person in the exercise of ordinary care and prudence in the ordinary affairs of life would or should acquire in the transaction of such business," *held,* error.

3. —— *Action by Endorsee — Fraud — Evidence.* When, in an action by the endorsee of a promissory note to recover thereon, it is contended by the maker that it was procured by fraud, and the trial court directs the jury as to the degree of proof required and the meaning of the term "preponderance of evidence," they should be charged that the burden is upon the maker to show such fraud by clear, decided and satisfactory evidence. An instruction in such a case that a bare preponderance is sufficient, *held,* error.

Appeal from Allen district court. Opinion filed January 6, 1912. Reversed.

*R. H. Bennett,* and *R. E. Cullison,* for the appellant.
*Baxter D. McClain,* for the appellees.

The opinion of the court was delivered by

WEST, J.: In June, 1907, the defendants contracted with an irrigation company for water rights sufficient to irrigate a certain described forty-acre tract of land in Elmore county, Idaho. The right to use this water was made applicable to any other land under the completed or proposed system of the company. The land was expressly stated to be state-selection land, belonging to the state of Idaho, and it was agreed by the company to purchase the forty acres from the state for the defendants for the sum of $10 an acre, one-tenth cash, remainder in eighteen annual payments at 6 per cent. In the event of failure to secure the land the company agreed to repay all moneys paid under the contract and to return all notes, the contract to be thereupon returned and canceled. Time was made essential, and failure to pay authorized cancellation and forfeiture by the company. In consideration of this contract, the defendants paid $400 cash, besides $200 commission, and gave the two notes sued on for $400, due June 22, 1908, and June 22, 1909, respectively. On September 28, 1907, they paid a sight draft for $47.50, to the order of the land board, upon the land contract. About March, 1908, they became dissatisfied, having received information that the company was not carrying out its contracts and was unable to do so. Two other Iola parties who had made contracts somewhat similar at about the same time also became dissatisfied. The plaintiff bank had for some years dealt with John H. Garrett, who represented the irrigation company, and had discounted notes amounting to upwards of $75,000. Officers or persons representing the bank had visited the company's headquarters, at Mountain Home, in 1906 and once or twice in 1907, and its officers had a general knowledge of the nature and character of the company's project. About April 15, 1907, the bank bought

a note made by one Dickey to the company and indorsed by the company, the financial status of the maker being inquired into.   Later, the note not being paid, the president went to Mountain Home, took a new note from the company for the same amount, dating it back to April 15, 1907, retained the original Dickey note, and agreed that it should be allowed to run one year, taking also a number of other notes as collateral, including the two in controversy.   On refusal to pay, the bank brought suit, and the main contentions of the answer were that the sugar company was created for fraudulent purposes; that it had become insolvent; that the notes were procured without consideration; and that the plaintiff was not an innocent holder.

The verdict and judgment were in favor of the defendants, and the plaintiff appeals, alleging error in rulings on evidence, in giving and refusing instructions, in refusing to require the jury to answer more definitely certain questions, in denying a motion for judgment on the findings, and in overruling a motion for a new trial.

The court refused instructions to the effect that value is any consideration sufficient to support a simple contract; that an antecedent or preëxisting debt constitutes value; that in order to defeat the action on the ground that the notes were fraudulently procured the evidence of fraud should be clear, decided and satisfactory—instructing, on the contrary, in a general way, that on the burden of proof a bare preponderance is sufficient.   Instructions were refused that neither suspicion of defect of title, knowledge of circumstances which would excite suspicion in the mind of a prudent man or put him upon inquiry, nor even gross negligence on the part of the holder for value before maturity, will affect his right to recover unless the circumstances or suspicions are so cogent

and obvious that to remain passive would amount to bad faith.

The jury found, among other things, in substance, that when the bank took the notes the defendants had made no effort to recall or recover them because of any fraud; that about $2000 of the irrigation company's note remained unpaid; that the defendants. made an effort to have the original contract carried out when they paid the sight draft for $47.50; that the purchase of the notes by the plaintiff was not done to enable the irrigation company to defraud the defendants; that the bank was guilty of bad faith in the transaction by which it took the two notes sued on as collateral security for the payment of the note made by the irrigation company, on or about August 15, 1907; that when the plaintiff acquired the notes it had notice or knowledge which it had obtained from the irrigation company of the contract between the latter and the defendants. Certain other questions were answered in a manner none to clear, but it is not apparent that had the jury been required to retire and make more specific answers anything substantial would have been accomplished thereby, except an answer that the notes were indorsed to the bank, and this was shown by the evidence and stated in the instructions. Neither was it error for the court to refuse judgment for defendants on the special findings.

The contract made with the defendants did not purport to convey any land, but bound the company to purchase it from the state of Idaho for the defendants for the sum already mentioned. The contract with witness Bowlus was for the conveyance of certain land, together with the water rights, and witness Bedell testified that his contract was for the purchase of certain land. These were made about the same time with that of the defendants, with the same company, and both witnesses testified that they received no land—that the company did not have it. The effect of this testimony

was that the same company which had obtained the
defendants' money on an agreement to purchase for
for them certain land and convey certain water rights
had at about the same time obtained the money of
these witnesses for the conveyance of land and water
rights, and that neither received anything in return.
20 Cyc. 118 thus states the rule:

"Independent fraudulent misrepresentations made to,
or transactions had with, a third person, if similar to
those alleged as a cause of action and if occurring at or
about the same time as the transaction in issue, when
the same motive for committing a fraud may reason-
ably be supposed to exist, are admissible in evidence,
not to prove the fraudulent representations or acts in
issue, for this would violate the rule as to *res inter
alios acta,* but as tending to show *scienter* or a fraudu-
lent intent or purpose in defendant's transactions with
plaintiff, and where they relate to the same subject
matter as those in issue they may be admissible in cor-
roboration of plaintiff's testimony regarding the state-
ments made to him.    This rule is a well recognized
exception to the principle excluding *res inter alios
acta.*"

In *Elerick v. Reid,* 54 Kan. 579, 38 Pac. 814, for the
purpose of showing a fraudulent intent of the seller of
a stock of goods it was held proper to permit a wit-
ness who was negotiating for the same stock at about
the same time to testify as to statements and repre-
sentations of the defendant with reference thereto
and to his private mark thereon.    In the opinion it was
said:

"The witness was permitted to go into the details
of his negotiation with the defendant.    His testimony
was important, and doubtless had its weight with
the jury.    Was it admissible in a case of this kind?
The transaction was almost contemporaneous with that
of Reid. . . . We think the evidence of this wit-
ness was proper for the purpose of showing fraud.    In
actions of this kind, the range of inquiry must neces-
sarily be wide.    The efforts of Elerick to sell to Walker
at his private letter mark, and his statements to him

as to what that letter mark represented, bore directly on the question whether his goods were marked as they were for the purpose of perpetrating a fraud on anyone he might be able to entrap. In proving fraud, it is always necessary to ascertain the motive actuating the party charged with the fraud. That motive may be proven by any act or declaration which fairly tends to throw light on the case. Surely the attempted dealings of the defendant with other persons, in which he undertook to make the same kind of a bargain as that made with the plaintiff, are well calculated to explain his motives in this transaction." (pp. 584, 585.)

(See, also, 1 Wig. Ev. § 302, et seq.; *Kelly v. Owens,* [Cal. 1892] 30 Pac. 596; *Porter v. Stone et al.,* 62 Iowa, 442, 17 N. W. 654; *Cragin v. Tarr,* 32 Maine, 55; *Stubly v. Beachboard,* 68 Mich. 401, 36 N. W. 192.)

This evidence was objected to as "incompetent, irrelevant and immaterial; was a transaction between others out of the presence of the plaintiff and not connected with the subject matter of this suit, not tending to prove any issue of the suit, and as having no sufficient foundation laid for its introduction." While its reception should have been accompanied with or followed by proper directions to the jury touching its purpose and applicability (which may have been given in this case) it seems to have come within the rule already indicated and we find no error in its admission. (*Commercial Travelers v. Barnes,* 72 Kan. 306, 308, 82 Pac. 1099.)

The refusal of the instruction touching consideration was harmless in view of the instructions given. In No. 5 the jury were told that it was undisputed that the notes were given, that they were unpaid, that they were endorsed and delivered by the company to the plaintiff before maturity.

"Hence it follows that the plaintiff will be entitled to recover . . . unless the jury should be satisfied from a preponderance of the evidence, first, that the notes were procured by The Great Western Beet Sugar Company, a corporation, from the defendants

by means of fraud or fraudulent practices and without any valuable consideration therefor and the burden of establishing such fraud and fraudulent practice and want or failure of consideration is upon the defendants to establish by a preponderance of the evidence in the case, and second, that the plaintiff herein had actual knowledge or notice of such fraud and fraudulent practices and want and failure of consideration in the procurement of such notes or it had knowledge of such facts that its action in taking the notes amounted to bad faith and the burden of establishing such fact by a preponderance of the evidence is upon the defendants herein."

This was followed by an instruction that knowledge of such facts that the action of the plaintiff amounted to bad faith meant in law "such knowledge of facts as a reasonable prudent and cautious person in the exercise of ordinary care and prudence in the ordinary affairs of life would or should acquire in the transaction of such business."

Section 63 of the Negotiable Instruments act (Gen. Stat. 1909, § 5309) provides that to constitute notice of an infirmity in the instrument or defect in the title the person to whom it is negotiated must have had actual knowledge of the infirmity or defect "or knowledge of such facts that his action in taking the instrument amounted to bad faith." In *Youle v. Fosha*, 76 Kan. 20, 90 Pac. 1090, it was held error to refuse an instruction that mere suspicion that a note was subject to any defense for fraud was not sufficient to prevent the holder from recovering, that in order to prevent his recovering it must be alleged and proved that he came into possession of the note with actual notice of the infirmities or that he was guilty of bad faith in taking it. In *Fox v. Bank of Kansas City*, 30 Kan. 441, 1 Pac. 789, it was held that the purchaser loses protection against an infirmity only when he is guilty of bad faith, or buys with actual notice. The rule thus announced by statute and decision is not complied with

by an instruction which supersedes actual notice with constructive notice, unless the failure to follow up facts constituting such constructive notice is such as to amount to bad faith on the part of the holder of the note. This addition to the quoted instruction was therefore erroneous. An instruction drawn in accordance with the rule in *Youle v. Fosha,* supra, was refused, and this refusal was error.

"By an early rule, which was itself a departure from a fairly well-established and settled principle, circumstances which ought to excite the suspicions of a prudent and careful man constituted such notice or knowledge to him as an inquiry would have probably disclosed and destroyed his character as a *bona fide* holder. This rule has been recognized and expressly or in substance followed in several American cases, and in some jurisdictions expressly affirmed by statute. It was, however, but a short time until this rule, both in its original and modified form, was abandoned, and the principle is now well established that neither a suspicion of defect of title, knowledge of circumstances which would excite such suspicion in the mind of a prudent man or put him on inquiry nor even gross negligence on the part of the taker will affect his right unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith. In other words the question is now one of good or bad faith and not of diligence, or negligence, except so far as the want of caution is material as bearing on the question of good faith, and suspicions or knowledge of facts which fall short of bad faith do not amount to notice." (7 Cyc. 943.)

The only explanation of preponderance of evidence found in the instructions is the following: "This preponderance of the evidence, however, need not be great; it is sufficient if it just barely preponderates." While the weight of the evidence is for the jury to determine, and while, as a general rule, the party producing evidence of the greater convincing weight is entitled to recover, there is a class of cases in which the settled rule in this state requires more than a bare

preponderance; and if in such case the jury be specifically instructed as to the meaning of preponderance such rule demands something more than was given in this instance. This rule applies when it is claimed, as in this case, that an instrument has been obtained by fraud. In *Insurance Co. v. Rammelsberg*, 58 Kan. 531, 50 Pac. 446, it was alleged that an application for an insurance policy was procured by fraud. The jury were instructed that the preponderance in any case need only be slight, so that they were enabled to see that there was a little more evidence on the one side than on the other. In the opinion, it was said:

"In all civil actions, the party asserting the affirmative of an issue is entitled to prevail upon the production by him of a preponderance of evidence; but, in cases where fraud in the execution of written instruments is charged, the question may well arise: How greatly must the evidence of such fraud preponderate? . . . It is true that the law in such cases requires nothing but a preponderance of evidence, but it requires that preponderance to be great enough to overcome all opposing evidence and repel all opposing presumptions. In order to do so, it should be of such weight and cogency as to satisfactorily establish the wrongful conduct charged." (p. 533.)

This decision was referred to with approval in *Kahm v. Klaus*, 64 Kan. 24, 28, 67 Pac. 542. In *Bichel v. Oliver*, 77 Kan. 696, 95 Pac. 396, it was held that before an oral agreement will operate as a transfer of land it must be proved by clear and satisfactory proof. Clear and satisfactory proof is required to take the case of a parol contract for the conveyance of land out of the operation of the statute of frauds. (*Wooddell v. Allbrecht*, 80 Kan. 736, 104 Pac. 559.) As the attention of the jury was called to the meaning and effect of the term "preponderance," and as an instruction in accordance with the rule in the Rammelsberg case that the evidence must be clear, decided and sat-

isfactory was requested, it should have been given, and
its refusal was error.

The judgment is reversed and the cause remanded
with directions to grant a new trial.