McCauley v. Custer.

No. 18,577.

J. C. F. MCCAULEY, *Appellee,* v. W. A. CUSTER et al.,
*Appellants.*

No. 18,576.

C. D. MCCAULEY, *Appellee,* v. W. A. CUSTER et al.,
*Appellants.*

SYLLABUS BY THE COURT.

1. CONTRACT — *Fraud — Evidence — Similar Fraudulent State-
ments Made to Third Parties.* Where one claims to be in-
jured by a contract procured through fraudulent representa-
tions, it is competent to show that the same party made like
representations about the same time to other parties with
whom such party was attempting to make similar contracts,
as tending to show motive or intent.

2. WITNESS—*Used by Both Parties—Impeachment.* Where one
party in a trial first calls and interrogates a witness, and then
the other party calls the same witness and he testifies, the
first party can not thereupon impeach him.

Appeals from Meade district court; GORDON L. FIN-
LEY, judge. Opinion filed October, 10, 1914. Affirmed.

*F. M. Davis,* of Meade, *R. W. Blair, C. A. MaGaw,*
and *T. M. Lillard,* all of Topeka, for the appellants.

*F. C. Price,* of Ashland, *H. Llewelyn Jones,* of Meade,
*Frank Doster,* and *A. M. Harvey,* both of Topeka, for
the appellees.

The opinion of the court was delivered by

SMITH, J.: Each of these actions involves practi-
cally the same questions. The actions rest largely upon
the same evidence and entirely upon similar evidence.
The remedy sought in each case is the same, viz.: to re-
cover land for which, respectively, the plaintiffs had
signed and acknowledged a deed of conveyance, blank
as to grantee, and had delivered it to defendant W. A.
Custer, and had received from him the amount of stock
in a corporation called the Sonora Development Com-

pany, Limited, which each had agreed to accept for the land to be conveyed to him. Damages were also claimed in each action, but the claim was not pressed on the trial and no judgment therefor was rendered, and no appeal was taken for the failure to grant the judgment.

On the separate trial of action No. 18,577 a jury was empaneled to which the court submitted one hundred and three questions of fact. An understanding of the issues in the case will be aided by inserting the following from the appellants' statement of the case:

"In 1907, Sam H. Smith, who was something of an adventurer, and Professor F. J. Merrill, a mining engineer of unquestioned ability. and character, began prospecting for placer gold mines in Mexico. They located about 535 acres of land, three miles from Llano, in the State of Sonora, Mexico, and organized a corporation called the Sonora Development Company, to develop it. They sold a large block of stock to Doctor Hopkins of Denver, who agreed to finance the proposition, but he failed to do so, and finally dissentions arose and Professor Merrill sold his interest to Sam Smith for $2500.

"Before going to Mexico Sam Smith had lived in Kansas and at one time had been station agent and telegraph operator for the Rock Island Railway Company, and had also worked for W. A. Custer on his ranch in Seward County, Kansas. In April, 1909, Mr. Smith went to Mr. Custer's ranch and told him about the mine and borrowed $200 from him to pay the taxes then standing against it. He again saw Mr. Custer and induced him to go down to the mine, and after looking over the property and seeing tests made Mr. Custer bought $10,000 worth of stock. . . . During the time Mr. Smith was managing the property he had a very smart American negro, named Chance Treadwell, as interpreter and overseer of the Mexican laborers, and when the new management took charge it retained him in the same capacity. When Custer first went to the mine, and when George, Brown and Piper were there, tests were made and gold was washed out for them by Treadwell. . . . The mine was a flat piece of ground, through which ran an

old river channel that had been filled up with sand and gravel, with an overburden of seven or eight feet of dirt. The gold was obtained from the sand and gravel, near bed-rock. The method adopted was to sink a shaft, about three by six feet, to bed-rock."

In April, 1910, W. A. Custer and others went to the mine in the state of Sonora, Mexico, and Smith had dirt taken from the prospect holes and sampled for him and others. The tests showed good. The jury also found that these samples were salted by one Treadwell, then an employee of Smith or of the company, for the purpose of deceiving Custer and others. The jury, however, in their findings say they were unable to agree whether Custer believed the representations made by Smith and Treadwell, or that Custer was convinced thereby that the property of the company was valuable as a gold mine. They find that Custer then bought from Smith 51,000 shares of the stock of the company for $10,200, and that there was no money in the treasury of the company at that time.

Summarizing the findings, Custer returned home and a meeting was held at which the committee who had been to the mine with him made a report. The plaintiffs were invited to the meeting, and were present. J. C. F. McCauley became interested and went twice to see Custer about buying stock, and contracted to buy $1000 worth of treasury stock. About that time Custer told the plaintiff that the gold-bearing dirt through the mining property averaged four feet in depth, and that the property was worth millions of dollars and would yield millions of dollars when properly worked; also guaranteed the lower two feet of the strata to yield gold upon an average of $3 to $5 per ton; that there were 535 acres in the property and practically all of it contained gold-bearing strata carrying those values; that such representations were false, but plaintiff believed them to be true and relied thereon and on account thereof executed the deed to the 320 acres of land involved in the deal.

In June, 1910, Custer, in company with the plaintiff, visited the mining property (the same evidence in No. 18,576 shows the plaintiff therein also accompanied them and was present at the subsequent tests and conversations at the mines). Custer showed plaintiffs the property and tested samples of dirt taken from twenty excavations for the purpose of demonstrating that it contained gold as he had represented it to plaintiff. He caused to be sampled 4½ or 5 tons of dirt and obtained gold of the value of $32 or $33. Treadwell made the tests in the same way he had made former tests when Custer was present.

Treadwell, under the direction and with the knowledge and consent of Custer, put foreign gold in the dirt to the amount of about $18, which was washed out and constituted a part of the gold taken out of the dirt at that time. The foreign gold was put in the dirt for the purpose of deceiving the plaintiff, and the plaintiff was deceived thereby, and believed the sampling was fairly and honestly done. Soon after plaintiff left the property, Treadwell dug therefrom about 3½ ounces of gold, worth between $60 and $70. It took about fifteen days to obtain it, and he handled from 100 to 200 tons of dirt. The jury specified six very material representations made by Custer to plaintiff, and found they were false and were known by Custer to be false when he made them; also, that they were made for the purpose of inducing plaintiff to purchase stock, and that plaintiff was deceived thereby and purchased 48,000 shares of stock by reason thereof and by reason of the sampling.

The court rendered judgment thereafter in favor of plaintiff and decreed that the defendants should reconvey the land to plaintiff, and plaintiff should surrender the stock which by consent of defendant he had received in lieu of the stock received from Custer. It was also ordered that on failure to reconvey the land as decreed, the decree should have the effect of such conveyance.

McCauley v. Custer.

Case No. 18,576 was thereupon submitted by stipulation to the court on the evidence in case No. 18,577, subject to the same objections made therein, and such additional testimony as either party might present. Both plaintiffs and defendant introduced some additional evidence. On the submission of this case, judgment was rendered for plaintiff for a reconveyance of land and return of stock as in the former case.

An appeal was duly taken in each case. The cases are briefed together, the rulings of the court being applicable to each case by the stipulation.

The appellants, in their brief, say that the evidence was conflicting, but nothwithstanding this, they ask this court to inquire into the entire case to see that justice is done. It is not to be inferred from this remark that counsel ask or expect this court to come to any different conclusion of fact on conflicting evidence than did the jury and trial court.

It is, however, urged that because some of the witnesses testified Custer said to plaintiff that he would guarantee the mining strata on the property would run not less than $3 to the ton, and that the strata would average four feet deep, that the evidence was incompetent because there was no such allegation.

The abstract of appellants fails to show that the attention of the court was called to these matters by any objection whatever, and we can not therefore assume that objections were made or that ruling was made thereon. If no challenge and no ruling was made, no error of law was committed. Moreover, it seems to be correctly said by appellee that the actions are not based upon a breach of warranty, but upon alleged fraudulent representations and conduct which deceived the plaintiffs and induced them to make contracts which otherwise they would not have made. That, in effect, this action is brought to restore to them what they lost and the defendants gained through fraud.

Appellants urge that the court erred in admitting evidence of false representations made to others by

the defendant and in the absence and out of the hearing of plaintiffs. The principle seems to be the same as in *Bank v. Reid*, 86 Kan. 245, 120 Pac. 339. It was there said that where one claims to be injured by a contract procured through fraud "it is competent to show that the same party made similar but not identical contracts with other grantees about the same time." (Syl. ¶ 1. See, also, *N. Y. Mut. Life Ins. Co. v. Armstrong*, 117 U. S. 591, 29 L. Ed. 997; *Butler v. Watkins*, 80 U. S. 456, 20 L. Ed. 629; *Mudsill Min. Co. v. Watrous*, 61 Fed. 163, 9 C. C. A. 415.)

Again, it is urged that the court erred in holding that the defendants could not impeach witness Treadwell. It appears that the appellants first produced and interrogated Treadwell as a witness. Afterwards the plaintiffs called and interrogated the same witness. It is said that defendants thereafter attempted to impeach him, though we find in the abstract no record of any question propounded to him for that purpose. Assuming that such attempt was made and that the court on objection refused to permit it, the ruling seems to be in accord with *Johnston v. Marriage*, 74 Kan. 208, 86 Pac. 461, and with section 913 of volume 2 of Wigmore on Evidence.

If it is conceded that Custer told Treadwell he was trying to sell stock to get money with which to develop the mine, and told plaintiffs that he would sell some more of his own stock to finance the development of the property, and also the other collateral facts urged by them, it does not follow that the judgments are against the evidence as appellants insist.

Generally a deed which omits the name of the grantee, as did the deeds in this case, is invalid. (*Bank v. Fleming*, 63 Kan. 139, 65 Pac. 213; 13 Cyc. 538; 9 A. & E. Encycl. of L. 108.)

The case of *Bank v. Fleming*, supra, points out some exceptions to the rule. But as Custer procured the deed by fraudulent representations and his wife, Bessie, is

not shown to have parted with any consideration for the deed, neither has any equitable right to the land.

On the other hand, there is evidence tending to show that false representations and fraudulent tests as to the amount of gold in the dirt taken from the mines were made and caused to be made by Custer for the purpose of deceiving the plaintiffs and inducing them to exchange their lands for his stock in the corporation; also, that such representations, as well as the tests, were believed and relied on as true by plaintiffs, and they were deceived thereby. The evidence and the fair inferences to be drawn from it sustained the findings of the jury.

The judgment in each case is affirmed.