## F. J. ALBRECHT v. IGNATZ RATHAI AND ANOTHER.[1]

November 4, 1921.

No. 22,492.

**Purchaser of note procured by fraud of payee not a good faith holder.**

1. A good faith purchaser of a note procured by the payee by fraud of the character defined in G. S. 1913, § 6015, is not protected as a bona fide holder, but, to make a defense within the statute, it must be shown that the maker's signature was obtained by fraudulent representations as to the nature and terms of the contract signed, that he did not believe it to be a negotiable instrument, and that he was not guilty of negligence in signing.

**Existence of facts essential to a defense, question for the jury.**

2. The evidence made a question for the jury whether the facts essential to a defense under the statute existed, and it was error to direct a verdict for the plaintiff.

**Error to direct verdict when evidence of fraud of payee and no evidence of buyer's good faith.**

3. If a note is procured by the payee by fraudulent representations

[1]Reported in 185 N. W. 259.

as to its contents, and other elements essential under the statute to constitute a defense do not exist, a good faith purchaser is protected, but fraud being shown, the burden is upon the purchaser to prove that he acquired title bona fide, and, under the evidence in this case, there being evidence of fraud and no evidence of the purchaser's good faith, a verdict should not have been directed for the plaintiff.

**Neither waiver nor ratification shown.**

4. The evidence does not show as a matter of law that the defendants waived the fraud or ratified the notes.

**Where broker was guilty of fraud in getting notes, buyer has burden of proving good faith.**

5. If the payee, the broker of the defendants in selling their farm, produced as a purchaser a person who did not complete the contract, the payee intending that he would not, but using him to get commission notes from the defendants, he was guilty of fraud, and his title to the notes was defective within the negotiable instruments act, and a purchaser would have the burden of proof of good faith.

**When evidence of other similar frauds may be competent.**

6. Evidence of other fraudulent acts, similar in character, committed about the same time, is competent to show intent and design in the particular act, and such frauds may be of such character as to show a series of fraudulent doings through which a common purpose runs, a general scheme to defraud broad enough to include that charged and of which it is a part, so as to make them competent as substantive proof of it. Whether the evidence received was sufficient in view of the facts stated in the opinion, is not decided.

Action in the district court for Faribault county to recover $1,800 on a promissory note. The defense is given in the third paragraph of the opinion. The case was tried before Dean, J., who at the close of the testimony granted plaintiff's motion for a directed verdict for the amount demanded and interest. From an order denying their motion for a new trial, defendants appealed. Reversed.

*Frundt & Morse* and *C. J. Laurisch,* for appellants.

*Charles E. Conant,* for respondent.

DIBELL, J.

Action on a promissory note for $1,800. A verdict was directed for

the plaintiff. The defendants appeal from the order denying their motion for a new trial.

On August 2, 1919, the defendants, Ignatz Rathai and Elizabeth Rathai, husband and wife, contracted to sell to one Clark their farm of 240 acres at $165 per acre, or $39,600. Of this amount $1,000 was paid in cash, $9,000 was to be paid on March 1, 1920, and the balance in seven years from that date. One Brecht was the agent of the defendants in procuring Clark as a purchaser and was to have as his commission all above $150 per acre for which he could sell the land, or, as the sale turned out, $3,600. Two notes of $1,800 each were given by the defendants to Brecht, due on March 1, 1920, one of which was indorsed to the plaintiff and is the note in suit.

The defendants claim that the notes were procured from them by fraudulent representations as to the nature of the contract, that they did not believe that they were signing promissory notes, and that they were not negligent in signing as they did. They claim, further, that Brecht fraudulently made use of Clark, as vendee, to get the commission notes, with no intention that the sale would be completed. The evidence as to this defense was stricken. The plaintiff offered no evidence in rebuttal. He claims that no case of fraud, within or apart from the statute, was made, and, further, that the defendants waived the fraud or ratified the notes.

1. By G. S. 1913, § 6015, it is provided:

"No person, nor the heirs or personal representatives of any person, whose signature is obtained to any bill of exchange, promissory note, or other paper negotiable under the law merchant, shall be held liable thereon if it be made to appear that the signature was obtained by fraudulent representation, trick, or artifice as to the nature and terms of the contract so signed, that at the time of signing he did not believe it to be a bill of exchange, promissory note, or other paper negotiable under the law merchant, and that he was not guilty of negligence in signing such paper without knowledge of its terms. The question of negligence in any suit on such contract shall in all cases be one of fact for the jury, and the person sought to be charged thereon shall be entitled to have the question of his negligence submitted to a jury."

This section was not repealed by the Uniform Negotiable Instruments Act. G. S. 1913, § 6007.

The purchaser in good faith of a note executed under the conditions defined by the statute, is not protected as a bona fide purchaser, but takes subject to the defense. Farris v. Koplan, 113 Minn. 397, 129 N. W. 770; Stevens v. Pearson, 138 Minn. 72, 163 N. W. 769; National Farmers Bank v. Nygren, 141 Minn. 49, 169 N. W. 228.

To make a defense within the statute, the signature must be obtained by a fraudulent representation as to the nature and terms of the contract signed, the signer must not believe it to be a negotiable instrument, and he must not be guilty of negligence in signing. This much but no more is required, and the good faith of the purchaser does not avail him.

2. Both defendants were born in Poland. Ignatz was 73 years of age at the time of the transaction, and had lived in this country 45 years. He and his wife spoke German. Neither could read nor write English. He spoke and understood English so as to get along in his business matters. She was less proficient. Brecht spoke German. The negotiations between him and the defendants were in German. Both Ignatz and his wife say that they did not know that they were signing a promissory note; that nothing was said about a note; that Brecht told them to sign the papers, and that they thought they were signing papers which constituted the contract of sale and nothing more. Mrs. Rathai wanted to delay until their son, who was somewhere about town, came. Brecht refused, saying that he had to make a train. The papers were hurriedly signed. It can be inferred that Brecht knew that the defendants were ignorant of English. He was acquainted with them. He was their agent and owed them active good faith. The evidence had a tendency to sustain the defendants' claim of fraud, want of belief that they signed a promissory note, and absence of negligence in signing. There was no evidence in rebuttal of it. A verdict should not have been directed for the plaintiff upon the issues made material by the statute.

3. The statute does not change the rule that knowledge in the purchaser of fraud in the payee in securing the execution of a note defeats

a recovery. Hinkley v. Freick, 112 Minn. 239, 127 N. W. 940. It makes a new defense, in certain cases, against a purchaser. Before the Negotiable Instruments Act, fraud being shown, the purchaser had the burden of proving himself an innocent holder. 1 Dunnell, Minn. Dig. § 1040. The same rule prevails under the act. When the payee's title is defective, as that word is used in the act, because of fraud, as provided in G. S. 1913, § 5867, a purchaser seeking a recovery must take the burden of proof of good faith. First Nat. Bank v. Denfeld, 143 Minn. 281, 173 N. W. 661; G. S. 1913, § 5871.

There was evidence of fraud, and, though the defendants were found negligent, so that the statute was not a defense, still, if the jury found fraud, the burden was on the plaintiff to prove that he was an innocent purchaser, and he offered no evidence. A verdict should not have been directed for the plaintiff, though an element essential to a defense against an innocent purchaser under G. S. 1913, § 6015, was wanting.

4. The plaintiff claims that the defendants waived the fraud and ratified the notes. Clark sued to recover the $1,000 paid upon the ground that the title was defective. This suit was dismissed on the merits on December 4, 1919. On the same date the defendants acknowledged a second contract, dated August 1, 1919, the same date as the first one, and acknowledged by the plaintiff on August 7, 1919, embodying the general terms of the first, but supplying certain omissions. At the time the defendants acknowledged, that is, August 7, 1919, they had information that a note or notes were outstanding. The plaintiff claims that the execution of the new contract constituted a waiver of the fraud or a ratification of the notes as a matter of law. We do not think so. The contract was between Clark and the defendants. Brecht did not participate in it. Neither contract said anything about notes. Clark was not concerned with the notes. The fraud did not concern the contract of sale with Clark, but the notes to Brecht. The defendants, though fraud had been practiced upon them by Brecht in securing the notes, might wish to have the contract with Clark carried out, for, if $9,000 was paid on March 10, 1920, when the two notes became due, they could pay Brecht's commission and avoid trouble. Under such circumstances it cannot be said that there was a waiver

or ratification as a matter of law, if indeed it could be rightly found as a fact. See First Nat. Bank v. Holan, 63 Minn. 525, 65 N. W. 952.

5. The defendants claim that Brecht did not intend that the contract with Clark would be completed, but through the device of a sale to Clark fraudulently contrived to get and make use of their notes which were greatly in excess of the cash payment made. Brecht owed his principals good faith, and could not excuse the production of Clark as a purchaser, if he did not intend completing the contract. See Butler v. Baker, 17 R. I. 582, 23 Atl. 1019, 33 Am. St. 897; Little v. Herzinger, 34 Utah, 337, 97 Pac. 639; Burnham v. Upton, 174 Mass. 408, 54 N. E. 873. If Brecht did not intend that Clark would carry out the contract, and made use of him and the contract merely to get the commission notes, he was guilty of fraud. He could not recover upon them. His title was defective within the wording of the Negotiable Instruments Act, and a purchaser would have the burden of showing good faith.

6. In support of their claim of fraud in this respect, the defendants offered testimony tending to show that Brecht, about the time of his transaction with them, got contracts from two other farmers in the vicinity for a sale of their farms to Clark. He paid, in behalf of Clark, $50 to each of them and was to pay an additional $1,000, or enough to make $1,000, in 30 days. He got from each a note of $1,600 for commission. In each case he was to have as his commission the excess over a net price. The deals were to be closed in March, 1920. Nothing was done toward carrying out the contracts. The evidence as to these two contracts was stricken.

The fact that Clark failed to carry out his contract was not alone evidence of Brecht's fraud as claimed. There was no evidence as to who Clark was, or of his calling, or of his financial standing, except that the local banker made inquiry by writing and did not get "a very definite answer." That received referred to his standing "a year or so back," and it was to the effect that "he was not very heavy." The evidence was itself incompetent and would not have been received over objection.

Evidence as to other fraudulent acts, similar in character and of

about the same time, is not received merely to show that the party charged has at other times practiced fraud, of one kind or another, or because his bad character in that respect is independent proof that he committed the fraud alleged against him. If admissible it is because it has some tendency to support proof of the main fact, by showing intent or design to defraud, or the other similar frauds shown may be of such a character as to show a series of connected fraudulent doings, a general scheme to defraud, broad enough to include that under consideration, and of which it is a part, so as to make them competent as substantive proof of it. Hinkley v. Freick, 112 Minn. 239, 127 N. W. 940; Ryan v. Dowell, 86 Wash. 76, 149 Pac. 343; Yakima Valley Bank v. McAllister, 37 Wash. 566, 79 Pac. 1119, 1 L.R.A.(N.S.) 1075, 107 Am. St. 823; McCauley v. Custer, 93 Kan. 27, 143 Pac. 489; People's Bank v. Reid, 86 Kan. 245, 120 Pac. 339; First Nat. Bank v. Harvey, 29 S. D. 284, 137 N. W. 365; First Nat. Bank v. Barker, 75 W. Va. 244, 83 S. E. 898; Beard v. Hill, 131 Mich. 246, 90 N. W. 1065; White v. Beal & Fletcher Grocer Co. 65 Ark. 278, 45 S. W. 1060; Wheeler v. Ahlers, 189 Pa. St. 138, 42 Atl. 40; First Nat. Bank v. Wise, 172 Iowa, 24, 151 N. W. 495; 1 Wigmore, Ev. §§ 301-304, 321, 333, 334; 1 Jones, Ev. § 142; 1st & 2nd Dec. Dig. Evid. § 135 (1, 2). The same rule has been applied in criminal cases. State v. Monroe, 142 Minn. 394, 172 N. W. 313; State v. Ettenberg, 145 Minn. 39, 176 N. W. 171; State v. Friedman, 146 Minn. 373, 178 N. W. 895, 184 N. W. 272.

Whether the evidence of similar transactions was sufficient to go to the jury, so as to make it error to strike it out, we do not decide, for there must be a new trial upon the other grounds mentioned. We have remarked upon the meagerness of the evidence as to Clark's condition and his connection with the transaction. In view of a new trial it is not out of place to say that, if there was the particular fraud claimed, there is likely available evidence showing something about Clark and his relation to Brecht and to the contracts of sale, which will make it easy to determine the admissibility of evidence of similar transactions and its sufficiency to put the issue to the jury.

The case does not present the question of the right of a broker against

his principal when he is to receive the excess over a net price and the sale is not completed, there being no fraud, or what conduct of the broker forfeits his right to an agreed commission. Martinson v. Hensler, 132 Minn. 437, 157 N. W. 714, 991; Meyer v. Keating Land & M. Co. 126 Minn. 409, 148 N. W. 452.

Plaintiff's evidence, if he chooses to offer any on a new trial, may show that the defendants knew that they were signing notes, and that there was no fraud under the statute cited, nor independently of it, but unexplained there was evidence making for the contention of the defendants which the direction of a verdict ignored.

Order reversed.